315, 355, Teresa Lopez v. Monterey, Washington, D.C. Counsel, you may proceed. Thank you, Your Honor. Your Honor and Counsel, my name is Emanuel Guy, and I'm here on behalf of Teresa Lopez, the petitioner. And I was sitting here listening to all the arguments, and... And Manifest Wait? Pardon?  I'm sorry, I couldn't hear you. On Manifest Wait? Yes. And if you go to Arlington, if it's three in a row, it's the trifecta. And I guess today is perfect for getting four in a row on Manifest Wait, the evidence. Because that's what we're here on. Our case involves a carpal tunnel syndrome. And as the Court knows, I'm sure I've heard these cases before, but carpal tunnel is caused by repetitive motion. It caused compression on the median nerve. And it leads to numbness, tingling, weakness, and muscle damage in the hands and fingers. The symptoms of carpal tunnel are clumsiness in hand and when gripping objects, numbness, tingling, as I say, pain extending to the elbow, problems in finger movements, and wasting away of part of the hand. And Dr. Sinha specifically referred to what he called a thenar eminence, which is this part right here. Well, you're describing generically causes of carpal tunnel syndrome. Right. And maybe you're taking that from one of the doctor's opinions. Maybe you're taking that from your own experience or in other cases. But very specifically in this case, we have doctors giving differing opinions as to what the recognized causes of carpal tunnel syndrome are. And here Dr. Slanker opined that the recognized causes of carpal tunnel syndrome are absent in this case. The commission chose to believe Dr. Slanker or place greater weight on Dr. Slanker's, or excuse me, Dr. Weiss's opinion. Yes. As opposed to Dr. Slanker. Right. And isn't that how we get to this point? I don't agree with what you have just said in the sense that when I took Dr. Weiss's deposition and I summarized the, well, Dr. Slanker, Dr. Garg, and Dr. Sinha all used objective medical tests to arrive at their diagnoses. Dr. Weiss, in fact, agrees that on his letter reported June 25th of 2008, he said that the condition of the carpal tunnel was caused by diabetes, birth control medication, and then he said probably bilateral carpal tunnel syndrome. And it cannot arise from the type of work done by the claimant. But then when I took his deposition, I said to him, did the medical test confirm the condition of ill being was carpal tunnel? And he said yes. The history, but he said the history was not consistent with the work experience that could cause that type of injury. Only vigorous activity such as excessive vibrations of a chainsaw or a jackhammer. Now, Your Honor, I point to a case called Noakes, which is a 2006 case out of this court. And in that case, there's a statement that says authoritative studies have shown repetitive movements are a risk factor for development of carpal tunnel. Nothing is mentioned about force. And the arbitrator in this case, what he did is he said there was no testimony presented on force used to, you know, harvest the mushrooms. And I don't think, first of all, I don't think force has a direct relationship. Repetitive movement is what causes the inflammation in the nerve area in the carpal tunnel. You cited a case where mention is made as to repetitive activities. But you're certainly not suggesting that that evidence alone in a case would cause us to take judicial notice that carpal tunnel syndrome is present. It's still something that has to be proven. And in this case, the proof came via physician's testimony. And Dr. Weiss indicated that it requires something else, that being the vigorous type of activity that you described. And the commission found that to be absent, found Dr. Weiss' opinions to be credible. Isn't that where we're at? Yes and no, Your Honor. Here's the problem, is that I think Dr. Weiss' medical opinion should not be given any credibility, because he just dissed the EMG and NCV conduction velocity studies. Dr. Sinha specifically said — He didn't dispute that she's got carpal tunnel. Pardon? He never disputed she has carpal tunnel. He says it was caused by diabetes or contraceptives. He came up with a reason why she has it. You want us to suggest that we can set aside or ignore or suggest that he has no validity, his opinion because he said that carpal tunnel, in addition to repetitive, it has to be forceful. And that is your argument in essence. We're not doctors. The commission is charged with the responsibility of understanding these medical issues. But, Your Honor, I have a doctor, Dr. Sinha, who said, when you have a delay, an NCV figure of 50 or 60 — Counsel, no one disputes you have contrary evidence. We're back to the A and B theory again. The commission could have decided this case in your favor. They could have disbelieved Weiss and believed your doctor, in which case your reporter would be appealing, arguing against the manifest weight. And what I keep trying to explain by the A and B is there is no right answer. Somebody has to pick between this evidence, evidence for A and evidence for B. And as long as there is evidence in the record to support the decision, we have to affirm it. We have no choice. But, Your Honor, that's exactly why I'm here. I think Dr. Weiss's medical position is bizarre, absolutely bizarre. Says who? Dr. Sinha. He says if it's disease-related, there will be no delay in the NCV figure. Counsel, I would agree with you except for one thing. Doctors rarely agree. We've always got one doctor saying the other doctor's opinion is voodoo or nonsense. And the commission has got to decide it. Justice Holdred, in the prior case, said it has to be objective medical evidence. The NCV test is objective. With Dr. Weiss, he completely ignored it. I asked him, what are the figures that suggest a disease-related origin of the injury? And he said, well, I don't even know. I don't pay any attention to those numbers. Dr. Sinha said the reason why it is not disease-related, which absolutely opposes Dr. Weiss's position, is because there is an NCV value showing a delay. And that means it's mechanical in the risk. Counsel, did anybody move to strike Weiss's opinion because it was based on an invalid basis? That he's not an expert because his opinion was? Look, if a doctor testifies, he's got this malady. How do you know that, doctor? Because I consulted to the entrails of chickens. You'd have his opinion stricken, wouldn't you? Because it's nonsense. Anybody strike this opinion? Your Honor, I would try to have it stricken, but I've gone through a hearing with the same arbitrator. When I moved to strike something, he said you can't do that. Well, I don't know what he says about striking. The fact of the matter is, as long as Weiss's opinion remains in the record, now we've got the situation of who makes the decision of whether Weiss is believable or your guy is believable. I think this Court, that's why I'm here, I think this Court should reject Dr. Weiss's statements and opinions medically because if you read the full context of his deposition that I've summarized, I just think it makes no sense whatsoever. He says all kinds of bizarre things about carpal tunnel. He does not use any objective medical tests to support his positions. And I think that's very important. I think we understand the essence of your argument. You're asking us to look carefully at the underlying basis of Weiss's testimony. Correct. And if we agree with you that the underlying basis is flawed, it goes out, and the weight then should go in favor of your doctors, correct? Right. There has to be an argument here, right? That is correct. Okay. I can get it. If this Court can't see through what I think is a medical opinion that I think simply has no credibility, then there's no point in even opinion cases, correct? I understand the point. I think we do. Well, we've sort of taken some of the things that we've talked about, some of the things that I would like to make and bring to the attention of the Court. But that's the crux of your position here. Sure. It has to be. Is that this decision is based upon Weiss, Weiss's opinion, and Weiss's opinion is humbug. Okay. Right. I mean, just to use the vernacular is what you're saying. Right. And to use another, he has no cred. I mean, that's. But Your Honor, pardon me, Your Honor. The basis for that is because Weiss, I think you articulated it in answer to questions, was, again, summarize that objective. No. Pardon? Could you just give a quick summary of why, in your opinion, Weiss's testimony is faulty? I think you've said it several times. Okay, Your Honor. I didn't mean to interrupt you. No, that's fine. But listen, Dr. Weiss does not know what causes carpal tunnel, but he knows that a harvesting mushroom can't do it. Dr. Weiss does not pay any attention to objective medical tests that all orthopedic surgeons use. He absolutely has no opinion on it. He said he didn't even know what the numbers meant. I asked him what a number of an NCV of 50 means. He said, oh, I don't know. I don't pay any attention to those numbers. Dr. Sinha said, I'm sorry, and all the other medical doctors that I know will always look for these medical tests. That's how they base their findings and what they want to do on it, on a given case. What did Weiss ignore in the NCV test? He admitted she had carpal tunnel. But, no, he said it's probable carpal tunnel, but I asked him what would be a minor or minimal carpal tunnel condition versus a severe. He said, oh, I don't pay any attention to numbers. I don't know what they mean. That's what he said. Weiss's theory was that her carpal tunnel was caused by diabetes or contraceptives, not that she didn't have carpal tunnel. He admitted that. He admitted she has it. So the NCV test does nothing but establish that she's got carpal tunnel. We all agree she's got carpal tunnel. The question is where did it come from? It came from repetitive motion because Dr. Sinha said if it was a neurological origin, there would be no slowdown in the NCV figures. It would be zero. But it was 50 to 60. So, therefore, he said specifically it has to be mechanical, meaning there's a swelling in the wrist and it's not disease-related. It has to be mechanical. And that's why he – well, I think he's a pretty good surgeon. He's from my hometown, and I think he's a good surgeon. Dr. Weiss does not know the significance of the NCV numbers, and he does not know the distinction between the NCVs and the peripheral neuropathy problem, and he's unable to make any conclusions from the test. But every doctor you know, the first thing they do is they take tests. Our daughter's a doctor, and she talks to me about how the tests, they look at all the tests. She's an anesthesiologist, and when they go into surgery, they look at all the tests, make sure the heart's okay. No responsible doctor is going to say, well, let's operate on someone, so what if they have a heart condition or whatever. They don't do that. They have to use those tests to realize, to make the decisions that are proper, to make sure the patient lives. Again, I just have to conclude, and I think the Court should conclude, that Dr. Weiss's medical opinion should not be accepted. It shouldn't have been accepted by the arbitrator. It shouldn't be accepted by the circuit court even, and it should not be accepted by this Court here. Thank you, Counsel. Counsel, I think the focus of the case has been narrowed by the Court here, and so if you would address that focus. Absolutely. Peter Stavropoulos on behalf of the defendant in this case, Monterey Mushrooms. We've all read Dr. Weiss's deposition. We know what his position is. His position, based on his review of the literature, is that to develop carpal tunnel, you need vibration, forceful grasping, or some systemic problem. In this case, he thought it was a systemic problem. There's no evidence of any force, no evidence of vibration. One compelling portion of his testimony was when he described, or used an analogy, hey, if you have surgery and you go to physical therapy, what do they prescribe for you? They prescribe low force, highly repetitive activities to heal the damaged tissue. So to him, it makes absolutely no sense that low force, high repetitive activities would damage healthy tissue. That's his position. Well, what is carpal tunnel? Is it tissue or is it nerve? It's actually a swelling of tissue that compresses the nerve. And it takes five to ten minutes to just release that inflammation there, and it releases the pressure on the nerve, and then the numbness and tingling goes away. In non-workout patients, it's like people within two or three days, they feel 100 percent fine. I've taken many depositions on the subject. But Dr. Sinha's testimony was the one that actually struck me as being unusual, because in all of my dealings and these types of injuries, I've never heard anyone say that they can tell you how a condition occurred based on a number from an NCB. I've never heard that before. And I think he could make a lot of money in this business if he can prove that if he has a number of 50, then it was well. Competitive and that's it. Yeah. I mean, then what would we have to argue about? There would be nothing wrong. Well, he has a theory. Yeah. Does he have any support for that theory? He didn't testify as to any. I mean, he got wise and says, oh, I read the literature. Right. I mean, so he's spouting somebody's literature theory. Sinha didn't cite to any treatise or study? Not that I remember from his testimony. I have to confess, I'm hung up on a simpler issue. I don't know which one of these doctors knows what they're talking about. But the question becomes, they both gave testimony as to their theory and to their conclusion as the causation. Now, it's supposed to be the Industrial Commission is supposed to in theory have all of this expert medical knowledge that forces us to give deference to their choice. Is there any reason why we shouldn't give deference to their choice? Not in this case, Your Honor. If I may be presumptuous and say that I'm option A, I think she went, the arbitrator chose option A and chose to adopt the opinions of Dr. Weiss over those of Dr. Sinha. You've heard that elucidation going on all morning. It will be in my briefs for the future. But in conclusion, this decision is not against the manifest weight of the evidence. The factual determination was made by the Commission and must be upheld by this Court. Thank you. Thank you, Counselor. Counsel, you may reply. Thank you. I'll bring this morning's proceedings to a merciful end on the MWE. But Dr. Sinha, your question, how the condition occurred, that is not what he said. What he ruled out was it is not neurologically related. It's mechanical because it's a swelling in the wrist because there's an NCV origin. And that's all he said. He just said it is not disease related. It's not diabetic. And all the other 15 things that Dr. Weiss said in his deposition that after he said he didn't know what caused it, then he said there were all these causes. I mean, I don't know how a doctor can say that. In essence, Sinha says he acknowledges it could have been caused by diabetes. Sinha says it could have been caused, but in this case it wasn't because of the objective test. Correct? Partly. What he says was if you have diabetes, you're more prone to injury. He was the second doctor, and he said if you have diabetes, you're more prone to carpal tunnel because you have that condition. But what he did was rule out neurological origin. Based on the test. On the test. Okay. He said it would be zero NCV if it was disease related. Right. And if it's mechanical within the wrist area caused by repetitive movements, then you know that it's mechanically from the job. And he said four doctors, Schlenker, Garg, Lukanchik, and Sinha said maybe not Lukanchik, but the three of them said it's caused by the activity at work. And here, Dr. Weiss says you can only have carpal tunnel from operating a chainsaw or something of that nature. Forceful gripping. Forceful gripping. And vibration. You know, if you've got a knife and you're cutting a delicate thing like a mushroom, it's just about the same as cutting tabletop butter that's been out for a while. You cut the mushroom, and there isn't much force, but it's this constant repetitive motion. That's what caused it. Thank you. Thank you, counsel, both, for your arguments in this matter. This morning we'll be taking our advisement. We're at disposition. We shall issue the court. We will stand in recess subject to call. Subject to call. Yes. Have a safe trip.